UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

                Plaintiff,                CIVIL ACTION NO. 11-15232

        v.                    DISTRICT JUDGE DENISE PAGE HOOD

JOHN DOES 1-21,             MAGISTRATE JUDGE MARK A. RANDON

                Defendants.

_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT JOHN
DOE 18'S MOTION TO QUASH SUBPOENA AND TO DISMISS (DKT. NO. 6)**

**I. INTRODUCTION**

Patrick Collins, Inc. ("Plaintiff") is the registered copyright owner of the adult movie "Cuties 2" (the "Movie" or "Work"). Plaintiff brought suit against 21 John Doe Defendants (collectively, "Defendants") alleging direct and contributory copyright infringement of the Movie. Plaintiff claims that Defendants downloaded and uploaded the Movie via a peer-to-peer protocol, BitTorrent. On December 16, 2011, this Magistrate Judge granted Plaintiff's motion for leave to serve third party subpoenas on Defendants' Internet Service Providers ("ISPs") to obtain Defendants' names and residential addresses (Dkt. No. 5).[1]

John Doe 18 ("Doe 18") was among those Defendants whose names and addresses Plaintiff sought. Doe 18 moves to quash the subpoena served on his/her ISP and to dismiss Plaintiff's claims due to misjoinder (Dkt. No. 6). Judge Denise Page Hood referred the motion

---

[1] Currently, Defendants can only be identified by their Internet Protocol ("IP") addresses. "A party may not seek discovery from any source before the parties have conferred as required by rule 26(f), except . . . when authorized . . . by court order." Fed R. Civ. P. 26(d)(1).

to this Magistrate Judge for a report and recommendation (Dkt. No. 4).  The issues have been

fully briefed (Dkt. Nos. 6, 9); oral argument was held on March 8, 2012.

The facts of this case are complex and highly technical, involving concepts of computer

science, networking, and other technology.  Despite this complexity, the straightforward and

well-established permissive joinder rule governs the outcome.  Because this Magistrate Judge

finds that joinder is proper, **IT IS RECOMMENDED** that Doe 18's motion to quash the

subpoena and dismiss be **DENIED**.

## II. FACTUAL BACKGROUND

Before delving into the workings of BitTorrent,[2] a simplified overview of Plaintiff's

claims may be helpful:

Plaintiff alleges that a specific individual received the Movie "Cuties 2," used a computer

to break the Movie down into small pieces, and created a file that allowed the pieces of the

Movie to be downloaded over the internet (Dkt. No. 1; Compl.).  According to Plaintiff, each

Defendant uploaded and downloaded pieces of the Movie through a series of transactions that

can be traced back to this specific individual, known as the "Initial Seeder."  Everyone who can

be traced back to this Initial Seeder is part of a common group of users ("Swarm") downloading

or uploading pieces of the Movie.  BitTorrent is the protocol that allowed Defendants to engage

in their allegedly related transactions.  Plaintiff alleges that Defendants are part of the same

Swarm, and this makes them ripe for Joinder under Federal Rule of Civil Procedure 20.

---

[2] This Spring, I had the good fortune to have an exceptionally bright law student, Matthew Crist, as an intern. Before attending law school Matt was a computer technician.  His skill in explaining the technology to the technologically challenged and assistance with this report and recommendation were invaluable.

Plaintiff chose to sue 21 potential defendants in the Swarm.[3]  Besides being in the same Swarm and copying the Movie, Plaintiff alleges that Defendants reside in the Eastern District of Michigan (based on their IP addresses).[4]

**A. How BitTorrent Works: A Detailed Explanation**

For the technologically challenged, a working definition of a few recurring terms is useful to understand how BitTorrent operates:

### Glossary of Terms

**Communication Protocol:** Procedures that enable devices within a computer network to exchange information.  Also known as a protocol.  *McGraw-Hill Dictionary of Scientific and Technical Terms* 440 (6th ed. 2003).

**Hash Identifier:**  A way to uniquely identify an encoded file.  There are many variations on this concept, however, it is simply a long string of letters and numbers that form a unique string.  It is practically impossible for two Hash Identifiers to be identical because of the extremely long string that is randomly generated for each piece when the Torrent is made.

**Hypertext Transfer Protocol (HTTP):**  Another system of communication standards.  HTTP is the protocol by which websites on the World Wide Web communicate with browsers; hence the HTTP before a website's address.

**File:**  A collection of related records treated as a unit.  *McGraw-Hill Dictionary of Scientific and Technical Terms* 797 (6th ed. 2003).  A file can be a movie, a set of text, a picture, *et cetera*.  The computer science use of the term is analogous to the term "file" in common parlance.

**File Transfer Protocol (FTP):**  Another system of communication standards wherein a file is directly transferred from the server to the downloader.

**Internet Protocol (IP):**  The set of standards responsible for ensuring that data packets transmitted over the Internet are routed to their intended destinations.  *McGraw-Hill Dictionary of Scientific and Technical Terms* 1101 (6th ed. 2003).

---

[3] Plaintiff is not required to join all parties under the permissive joinder rule.  Nor may Defendants demand that Plaintiff join another potential defendant that is not a "necessary party." *See, Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980).

[4] The court must have personal jurisdiction and venue must be proper to consider the issue of joinder.  Plaintiff has satisfied these conditions.

**IP Address:**  The numeric representation of a device on a network that communicates using Internet Protocol.  The address is of the form "**xxx.xxx.xxx.xxx.**"

**Leecher:**  (1) A BitTorrent user who has not yet fully downloaded a file; (2) A user who has inhibited, or throttled, the upload speed setting in the Client Program so that it will download much more than upload; (3) A user who exits BitTorrent after the download is complete to prevent uploading to other peers.

**Piece:**  An initial seeder breaks a file into pieces.  The pieces are typically one-quarter megabyte in size; however, the last piece will be the size of the remainder.  The Hash of the pieces is included in the Torrent file.  At any given moment, a peer may be simultaneously uploading and downloading pieces from and to many different peers within the same swarm for the same Torrent.  Bram Cohen, *Incentives Build Robustness in BitTorrent*, 1 (May 22, 2003), http://bittorrent.org/bittorentecon.pdf.

**Seeder:**  A user who has downloaded the whole file and is uploading all of its pieces to other peers in the swarm.  Cohen, *Incentives Build Robustness in BitTorrent*, *supra*.

**Seeder, Initial:**  The individual who has taken a complete file (a movie, picture, program, or any other kind of computer file) broken it down into pieces, encoded it with Hashes, created the Torrent file with the data about that file and its tracker, and made the complete file available on BitTorrent.

When users begin downloading from this initial seeder, a swarm is created; each individual in the first stage of the swarm downloads the same file from the same initial seeder with the same Hashes and then the file spreads virally with that same digital fingerprint as torrent

**Swarm:**  A group of users downloading the desired file from each other, from seeders (if any are online), and from the initial seeder (if still online).  Additionally, a swarm denotes that all of the users in it are downloading files with the same Hash Identifier.

**Uniform Resource Locator (URL):**  The unique Internet address assigned to a Web document or resource by which it can be accessed by all Web browsers.  The first part of the address specifies the applicable Internet protocol, for example, http or ftp; the second part provides the IP address or domain name of the location.  Abbreviated "URL."  *McGraw-Hill Dictionary of Scientific and Technical Terms* 2225 (6th ed. 2003).

### 1.  BitTorrent defined

BitTorrent is a protocol for distributing files.  It identifies content by URL and is designed to integrate seamlessly with the web.  Its advantage over plain HTTP is that when multiple downloads of the same file happen concurrently, the downloaders upload to each other, making it possible for the file source to support very large numbers of downloaders with only a modest increase in its load.

*See* Bram Cohen, *The BitTorrent Protocol Specification*, BitTorrent.org (Feb. 28, 2008), http://www.bittorrent.org/beps/bep_0003.html.  Users of the BitTorrent protocol download and install the BitTorrent program ("Client Program" or "Client") onto their computers and then search the internet for a unique ".torrent"[5] file ("Torrent").  *See* Cohen, *The BitTorrent Protocol Specification*, *supra*.  After downloading the relatively small Torrent, the Torrent directs the Client Program to the location and identity of the pieces of the desired file (or Work) by way of a tracker.  Cohen, *The BitTorrent Protocol Specification*, *supra*; *e.g.*, Cohen, *Incentives Build Robustness in BitTorrent*, *supra*.  The Client Program then downloads the pieces of the file from other BitTorrent users and stores them locally on the user's computer.  *See* Cohen, *Incentives Build Robustness in BitTorrent*, *supra*.

### 2. The Torrent File

The Torrent file is the hub of the BitTorrent system.  The Torrent file is created by the initial seeder.  *See* Cohen, *The BitTorrent Protocol Specification*, *supra*.  The Torrent file contains: the URL of the tracker, information about the file that has been broken down into pieces, the number and size of the pieces, and the SHA1 hashes ("Hash Identifier") unique to each initial seeder's Torrent file.  Cohen, *The BitTorrent Protocol Specification*, *supra*.  When the initial seeder breaks the file (here, the copyrighted Movie) into pieces, each piece gets encoded using a Hash Identifier.  Cohen, *The BitTorrent Protocol Specification*, *supra*.  After a user has downloaded all of the pieces of the desired file from peers, the file will be reconstituted

---

[5] To be explained in more detail below.

into a complete copy of the original file and will be usable just as the original.  As a movie, it will then be viewable.

### 3.  *The Hash Identifier*

The Unique Hash Identifier (also known as a hash tag, SHA1 hash, or a digital fingerprint) is a long string of letters and numbers[6] that is used to compare a copy of a file with the original to ensure data integrity.  In the context of BitTorrent, the Hash Identifier is randomly generated and assigned to each piece of a file when the initial seeder creates the Torrent file. This Torrent is then downloaded by users who wish to obtain the work that the initial seeder has made available.  Before two peers can transact a piece of the Work, BitTorrent compares the Hash of each user.  If the Hash Identifiers are not identical, the connection between peers is severed and no transaction takes place.  Cohen, *The BitTorrent Protocol Specification*, *supra*.

### 4.  *The Peers*

Users who download and open the same Torrent file are coordinated by the tracker. Cohen, *Incentives Build Robustness in BitTorrent*, *supra*.  Unless the user affirmatively inhibits uploading, the Client Program will announce and automatically upload each piece to other peers who have used the same Torrent.  Cohen, *Incentives Build Robustness in BitTorrent*, *supra*. If the user has downloaded all of the pieces, he will automatically become a seeder and will automatically upload the file to all peers in the swarm as they request pieces.[7]  This coordination through the Torrent file is key to the success of a swarm, because each individual user's success or failure to fully download the file is dependent on other users downloading the same Torrent

---

[6]  Plaintiff alleges that each Defendant downloaded a piece of the Movie with the exact same Hash Identifier: EE7B1E84B6FD741359D99A0397DF043842BAB4D7.  (Dkt. No. 1 at 9).

[7]  The desire of the creator of BitTorrent is that users become seeders instead of inhibiting the upload of pieces to other users (leeching); thus, the default setting is that each user automatically uploads each piece to other peers at all times until the user affirmatively chooses to disable uploading, exits the program or deletes the Torrent.  *See* Cohen, *Incentives Build Robustness in BitTorrent*, *supra*.  The fact that Plaintiff's investigator was able to download a piece from each Defendant means that they did not inhibit uploading.

file and allowing the upload of pieces.  *See* Cohen, *Incentives Build Robustness in BitTorrent*, *supra*; *see e.g.*, Cohen, *The BitTorrent Protocol Specification*, *supra*.

### III.  FACTUAL ANALYSIS

**A.  Steps Taken By Plaintiff's Investigator**

Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8-10).  It is important to understand the implications of this allegation before determining whether joinder is proper.  If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie -- traceable via Hash Identifier to the same Initial Seeder -- on his or her computer and allowed other peers to download pieces of the Movie.

By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer.  During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash;[8] otherwise, the download would not have occurred.

If Plaintiff's allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:

1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder**; or

2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or

3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or

---

[8]  The Hash value of EE7B1E84B6FD741359D99A0397DF043842BAB4D7.  (Dkt. No. 1 at 9).

7

4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.

In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

## IV. LEGAL ANALYSIS

At the outset, it should be noted that Doe 18's "motion to quash subpoena and dismiss," must be construed as a motion to quash and motion *to sever*. Severance – not dismissal -- is the correct remedy of misjoinder. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party"); s*ee also*, *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 342 (D.D.C. 2011) (clarifying that while misjoinder is not fully defined, if it is found, severance is the correct remedy); *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 12 (D.D.C. 2004) (stating that if the preconditions of Rule 20(a) are not satisfied, then the misjoined parties are to be severed into discrete actions);

8

*e.g.*, *Donkeyball Movie, LLC., Does 1-171*, 810 F.Supp.2d 20, 27 n.6 (D.D.C. 2011); *Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d 1150, 1165 (N.D. Ca. 2011).[9]

### A. Permissive Joinder

Federal Rule of Civil Procedure 20(a)(2) allows the joinder of defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 20(a)(2) lists three categories of rights to relief and supplies two preconditions to joinder.  To satisfy Rule 20(a)(2), a plaintiff must assert a right to relief against a group of defendants jointly, severally, or in the alternative.[10]  The preconditions are: 1) the right to relief must be with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and 2) at least one question of law or fact must be common to all defendants.

Rule 20 should be viewed in light of the overarching policy of Rule 1 which requires that the rules "be construed and administered to secure the *just, speedy, and inexpensive* determination of every action and proceeding."  Fed. R. Civ. P. 1 (emphasis added). "The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.  Single trials generally tend to lessen the delay, expense and inconvenience to all concerned."  *Mosley v. General Motors Co.*, 497 F.2d 1330,

---

[9] If the Plaintiff is required to proceed against each of the 21 defendants separately, then the court would have to create 21 dockets and schedule 21 pre-trial conferences.  After all that, the court may very well consolidate the 21 actions under Fed. R. Civ. P. 42; meanwhile, the Plaintiff and the court would have expended a great deal of time and money.

[10] A right to relief against defendants jointly requires concerted action by two or more parties. A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required.  An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one.  4 Moore's Federal Practice § 20.03. Plaintiff asserts a right to relief against Defendants jointly and a right to relief severally; however, a right to relief against the Defendants severally alone is sufficient to satisfy the first clause of Rule 20.

1332 (8th Cir. 1974) (citation omitted).  Accordingly, the Supreme Court emphasized that, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (internal footnote omitted).

"In order to satisfy the first prong of [Rule 20], the claims must be logically related." *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 10 (D.D.C. 2004) (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926)).  "The logical relationship test is flexible." *Disparte,* 223 F.R.D. at 10.

Furthermore, permissive joinder is to be liberally construed.  *See Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).  Applying this liberal construction standard in *United States v. Mississippi*, 380 U.S. 128, 142, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965), the Supreme Court found that allegations of a state-wide system designed to enforce the voter registration laws in a way that would inevitably deprive African-Americans of the right to vote solely because of their color, justified the joinder of registrars of six counties as defendants.  The Supreme Court reversed a district court's decision which held that, "the complaint improperly attempted to hold the six county registrars jointly liable for what amounted to nothing more than individual torts committed by them separately with reference to separate applicants." *Mississippi*, 380 U.S. at 142.  Although the district court's decision amounted to a finding of a lack of concerted action by the six registrars – who were from different geographical areas, acted independently of each other, and perhaps had never met one another – the Supreme Court interpreted Rule 20 to encompass a right to relief severally so long as transactional relatedness and commonality in fact or law are met. *Mississippi*, 380 U.S. at 142-43.

The permissive joinder of defendants is also encouraged for purposes of judicial efficiency. *See United Mine Workers of America,* 383 U.S. 715 at 724; *Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 10 (D.D.C. 2004); *Donkeyball Movie, LLC., v. Does 1-171*, 810 F.Supp.2d 20, 26 n.6 (D.D.C. 2011); *but cf Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d 1150, 1165 (N.D. Cal. 2011) (holding that filing 188 individual actions does not hinder plaintiff's ability to protect its copyright and that fairness to the defendants is more persuasive than judicial economy and fairness to the plaintiff).

### 1. *Meaning of transaction*

The Eighth Circuit clarified the meaning of the word "transaction" for purposes of Rule 20. *Mosley v. General Motors Co.*, 497 F.2d 1330, 1333 (8th Cir. 1974). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley v. General Motors Co.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593 46 S.Ct. 367 (1926)). Therefore, "Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. *Absolute identity of all events is unnecessary*." *Mosley*, 497 F.2d 1333 (emphasis added).

## B. Joinder Is Proper

Applying the legal standards discussed above, joinder of Defendants is proper. Plaintiff alleges a right to relief severally against Defendants for direct and contributory copyright infringement of the Work; Plaintiff says that Defendants networked with other each other and/or with other peers through a series of transactions in the same swarm to infringe on Plaintiff's copyright. Stated simply:

> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint – a series of individuals connecting either directly with each other or

as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin, Inc. v. Does 1-176*, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012) (emphasis in original) (holding that 176 defendants were properly joined); *see also, OpenMind Solutions, Inc. v. Does 1-39*, C 11-3311 MEJ, 2011 WL 4715200 (N.D. Cal. Oct. 7, 2011) (holding the joinder of 39 defendants proper in a case with facts nearly identical to these), *and Hard Drive Productions, Inc. v. Does 1-55*, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011) (holding that joinder of 55 defendants at a similarly early stage of litigation was proper; but requiring plaintiff to amend its complaint for other reasons).

## C.  Contrary Cases

Courts are divided over whether joinder is proper in cases involving BitTorrent defendants.  Many cases agree with the result recommended by this Magistrate Judge.  *See, e.g., Digital Sin, Inc. v. Does 1-176*, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012); *Donkeyball Movie, LLC., v. Does 1-171*, 810 F.Supp.2d 20 (D.D.C. 2011); *Hard Drive Productions, Inc. v. Does 1-55*, 11 C 2798, 2011 WL 4889094 (N.D. Ill. Oct. 12, 2011); *First Time Videos, LLC., v. Does 1-76*, 276 F.R.D. 254, 258 (N.D. Ill. 2011); *Nu Image, Inc. v. Does 1-3,932*, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fl. Feb. 28, 2012).  In several earlier cases, courts grappled with other peer-to-peer protocols[11] that are functionally distinct from the BitTorrent protocol.  Additionally, several other courts have found joinder improper due to a lack of a concert of action.  But, a concert of action is not required since Plaintiff alleges a right to relief severally against Defendants. Alleging a right to "several" relief is a proper route to joinder. Fed. R. Civ. P. 20(a)(2)(A).

---

[11] Such as Gnutella, Grokster, and Napster.

Cases reaching the opposite result are also factually or legally distinguishable.  For example, the United States District Court for the District of Arizona recently held that joinder of 131 defendants was improper.  *See Third Degree Films, Inc. v. Does 1-131*, 12-108-PHX-JAT, 2012 WL 692993 (D. Ariz. Mar. 1, 2012).  In its discussion, the court said, "because pieces and copies of the protected work many [sic] be coming from various sources within the swarm, individual users might never use the same sources."  *Third Degree Films*, 2012 WL 692993 *5. While this may be true, the reasoning avoids the relationship (traceable back to a specific initial seed through a series of transactions) that must exist between all users in the same Swarm.  The *Third Degree Films* court also stated that, "[the swarm] can last for many months.  During those months, the initial participants may never overlap with later participants."  *Third Degree Films*, 2012 WL 692993 *5.  However, the law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm.[12]

Several district courts in the Northern District of California have also considered cases against BitTorrent users, and have found joinder of large numbers of "Doe" defendants to be improper.  In *Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d 1150 (N.D. Cal. 2011), the court found that joinder of 188 BitTorrent users was improper.  The court examined several older cases that addressed the issue of joinder with other methods of file transfer and appeared to be persuaded by similar arguments that there is a lack of concert of action by BitTorrent users and therefore joinder was not proper.  *See Hard Drive Productions v. Does 1-188*, 809 F.Supp.2d at 1163.  As discussed, concert of action, *i.e.*, a right to relief jointly, is not a precondition of joinder.  Plaintiff asserts a right to relief jointly against Defendants *and* severally (Dkt. No. 1 at

---

[12] *See supra* discussion of *Mosley*, 497 F.2d 1333.

3).  Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the assertion of a right
severally.

The *Hard Drive Productions* court also reasoned that the various defenses may serve to
demonstrate that joinder is improper.  *See Hard Drive Productions,* 809 F.Supp.2d 1150 at 1164.
However, "[t]he second prong of Rule 20(a) requires only that there be some common question
of law or fact . . . not that all legal and factual issues be common to all [defendants]."  *Disparte
v. Corporate Executive Board*, 223 F.R.D. 7, 11 (D.D.C. 2004).  The court in *Hard Drive
Productions* decided that a plaintiff must show that the defendants were in the same swarm at the
same time.  *Hard Drive Productions,* 809 F.Supp.2d at 1164.  This requirement, however,
overlooks the thrust of the allegation that Defendants were part of the same swarm.  That
Defendants were all part of the same swarm demonstrates that they downloaded the Movie
through a series of uploads and downloads from the same initial seeder.  The *Hard Driver
Productions* court also said,

> In this age of instant digital gratification, it is difficult to imagine, let alone
> believe, that an alleged infringer of the copyrighted work would patiently wait six
> weeks to collect the bits of the work necessary to watch the work as a whole.  At
> the very least, there is no proof that bits from each of these addresses were ever
> assembled into a single swarm.  As the court previously explained, under this
> court's precedent regarding other file sharing protocols, merely infringing the
> same copyrighted work over this period is not enough.

*Hard Drive Productions,* 809 F.Supp.2d at 1163.

But, it is not that an infringer would wait six weeks to receive the Movie, it is that the
infringer receives the Movie in a few hours and then leaves his or her computer on with the
Client Program uploading the Movie to other peers for six weeks.  Because the Client Program's
default setting (unless disabled) is to begin uploading a piece as soon as it is received and
verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded

14

the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Another contrary decision is found in *SBO Pictures, Inc. v. Does 1-3,036*, 11-4220 SC, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011). The *SBO Pictures* court determined that joinder of 3,036 defendants was improper, severed 3,035 defendants, and then maintained the action against defendant Doe 1. *Id*. The *SBO Pictures* opinion reads the term "closely" into Rule 20 and thus holds that Rule 20 requires "a series of closely related transactions." *Compare SBO Pictures, Inc. v. Does 1-3,036*, 11-4220 SC, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011), *with United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); and *Pasha v. Jones*, 82 F.3d 418 (6th Cir. 1996) ("[claims may be joined if] they assert any right to relief relating to or arising out of the same transaction or . . . series of transactions . . . . Joinder is encouraged because it avoids multiple lawsuits involving similar or identical issues"), *and Disparte v. Corporate Executive Board*, 223 F.R.D. 7, 10 (D.D.C. 2004) ("[i]n order to satisfy [transactional relatedness] the claims must be logically related. . . . The logical relationship test is flexible"). There is no basis to conclude that an additional requirement of "closely related transactions" is contemplated by Rule 20, and to so conclude topples the plain reading of Rule's allowance of "a series of transactions."

Finally, in a case involving the same Plaintiff as this case, a recent Eastern District of Michigan decision found that joinder of 23 BitTorrent defendants was improper. *See Patrick Collins, Inc. v. John Does 1-23*, 11-CV-15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012). The court in that case found that -- for joinder purposes -- BitTorrent was indistinguishable from prior methods of internet file sharing, and then followed a line of cases holding that joinder was

improper in the context of those other methods of file sharing.  This Magistrate Judge

respectfully disagrees with that conclusion, and instead finds that the technology underlying

BitTorrent does make it different from other file sharing methods, for joinder purposes.  Joinder

is proper in this case.

Since joinder is proper, the motion to sever must be denied.  The motion to quash must

also be denied; as a proper party, Doe 18 has no basis to quash the subpoena. Fed.R.Civ.P.

45(c)(3).

## V.  CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Doe 18's motion to quash

subpoena and dismiss this case be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.

Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  April 5, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, April 5, 2012, electronically.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*
